Judge Wright
delivered the opinion of the court:
It is claimed that the assigment of Jordan, Ellis & Co. is fraudulent and void. The only objection urged, is to the-clause which: declares it inoperative in favor of any creditor who should not, *267 within ninety days, execute the same and release the debtor. The case is without any evidence of fraud in fact, and presents a question of fraud in law, to be established by the force of the instrument.
It is said the genius of the common law opposes itself to every species of fraud; and the most solemn acts, even judicial proceedings, if tinctured with it, are held to be vicious and unavailing.While the multiplied and ever-varying relations of society refine the arts of deceit, and the intricacy of legal transfers and proceedings multiply the means of fraud and increase the difficulty of tracing and fixing the fraudulent connection between the original act and the ultimate ^purpose, they invoke the greatest vigilance of the law in .scrutinizing colorable and equivocal transactions, and require of courts, in deciding upon them, to have some regard to public utility. It seems admitted that a debtor, in failing circumstances, may, in good -faith, pay one creditor in money or goods, in preference to another; but the frequent abuses practicedj in transfers, to effect a preference by means of trusts, instead of actual payment, has led many to doubt the policy of holding-such transfers valid. As a general proposition, it will not be' denied that persons so situated are legally bound to good faith between themselves and their preferred creditors, and moreover to avoid, in transactions connected with the placing their effects beyond the reach of legal process, all bad faith in respect of other persons standing in a relation to be affected by them. The practice among speculating traders, of shattered and desperate circumstances, of accumulating property upon credit with a desire of securing the means of satisfying the claims of confidential creditors, who contribute in various ways to keep up the credit upon which the property has been procured, and then passing their effects, so procured, into the hands of trustees to be protected from legal process, and to be exhausted in satisfying those preferred claims, leaving all other creditors without a farthing, can hardly be justified on any sound moral or legal principle. Instances are-frequent of merchandise, procured from an honest trader on credit, being handed over in bulk to trustees to secure indorsers and other confidential creditors. Equity delights in equality, and it is becoming a grave question, whether courts of justice should longer countenance a sinking debtor, in preferring one creditor to another in the distribution of his effects. The opinion is gaining *268 .ground, that chancery should control such assignment, and compel an equal distribution of the effects assigned among all the -creditors.
In Burd v. Smith, 4 Dal. 76, the high court of appeals in Pennsylvania held an assignment void, which provided for the distribution of the assigned effects to such creditors as should agree to accept, and the payment of the proportions of such creditors as should not accept to the debtor, because it contained a resulting trust to the debtor and placed *the dissenting creditors in his power, or that of trustees appointed by him. The judges in that case delivered their opinions seriatim. Smith, J., held the -deed void on its face. Breckenridge, J., page 88, says the right of a debtor to favor particular creditors “ has been allowed, perhaps, ■on principles of humanity; or in favor of just debts, to exclude • debts in law not strictly ex debito justitice. But I do not think the practice should be encouraged.- It is calculated to create confusion, uncertainty, and collision. I see nothing that will prevent the mischiefs of voluntary settlements and conveyances, but a gen-eral declaration that they are all void as against creditors.” Rush, J., page 89, says, “Until the expiration of nine months no distribution is to be mafle nor any creditor paid, however vigilant he may be. If a creditor may, in this mode, or by a device of this sort, ■frustrate his creditors for months, where shall the line be drawn ? Why not delay his suit for nine years as well as for nine months? His rights are the same in both cases. As there is no law of the land that authorizes a debtor to. pass an act of limitation in his •own favor, I hope this court will never do it for him.” “In the case before the court, we have an instance of a man plunged into debt, covered with lawsuits, overwhelmed with judgments, and -others impending over his head, suddenly and secretly, without the knowledge of a single creditor, conveying to trustees of his nomination an immense property, on such terms and in such man-ner as he has chosen to prescribe. I can not conceive anything more dangerous than to sanction, by judicial determination, a deed • of this description. It will be vesting the debtor with an unlimited power at all times over his property, to baffle his creditors, ■under the specious pretext of paying them. A decision of this sort is warranted by no adjudged case in the books.”
The Supreme Court of the same state, in Lippincott v. Barker, 2 ;Bin. 182, sustained an assignment conditioned that it should ben *269 efit only such creditors as should execute a release in four months.. But Chief Justice Tilghman, page 182, says, “I beg, however, to be-distinctly understood, that my opinion is confined to the circumstances of the present case, for there are many and strong objections to deeds of assignment, made without the privity of creditors, and ^excluding all who do not execute releases.” Judge Breckenridge, page 190, in giving his opinion, says : “It has been left to the asiutia Americana of debtors, to devise such a warehousing of effects, out of the hands of the law for a time, for the benefit of' particular creditors. I think it to the let and hindrance of creditors, and that such disposition is void both at common law and by-statute; though not fraudulent in fact, in the particular case, yet-fraudulent in law, and therefore void. It is not simply a surrender of his property as satisfaction pro rata of his debts that the-insolvent has in view. He couples an interest for himself in obtaining a discharge from that proportion of the respective debts which may remain unsatisfied. It is taking an undue advantage-of the situation of the creditor to impose this condition. It is immoral to exact it. Tolenti non fit injuria if the creditor accepts, but it is making a volunteer by compulsion, and is in fact a robbery. One -enlightened on the principles of' moral honesty would never think of it. He would give what he had to one or more, or to the whole of his creditors, but he would never think of annexing a-condition precedent or subsequent to such surrender. Of such conditions, a chancellor would not compel a fulfillment. I can think of nothing either morally honest, or strictly legal, but the indefinite, unconditional surrender of the property. Pass this-boundary, and I can draw no line where an assignment shall be supported and where not. Every case must be ad arbitrium judiéis without principle to guide; and he must decide according to his-own feelings of what is just and humane, or hard and uncharitable, in the case.”
In Passmore v. Eldridge, 12 S. & R. 198, the court held that an assignment would be void, if the transaction, taken altogether, has a direct tendency to protect the property of the debtor from his-other creditors. The cases of Chever v. Clark, 7 S. & R. 570; Scott v. Morris, 9 S. & R. 123, and Wilson v. Kneppley, 10 S. & R. 439, seem to admit the debtor’s right indirectly to coerce his creditors, by a conditional assignment, prohibiting them from participating-in his effects unless they executed releases within a reasonable time:. *270 And in Pierpont & Lord v. Graham, 4 Wash. C. C. 232, Judge Washington held, that a condition to an assignment ^requiring • creditors to execute a release before taking the benefit of it, was not per se evidence of fraud, and that such disposition of property by the debtor would be valid, if it was not thereby to be sheltered from creditors an indefinite and unreasonable time.
In Widgery v. Haskell, 5 Mass. 144, a debtor transferred all his property to trustees, the proceeds .to be applied to pay indorsers and securities in full, and the remainder to be distributed to such • other creditors as gave notice in six months, stayed all legal process, consented to have their claims adjusted by the majority, and released the debtor on the admission of their demands. This was held void, though the decision did not turn on the condition for a release. Chief Justice Parsons, in giving the' decision, remarks : 11 Was this conveyance bona fide? Was it made with honest intentions, etc., and for purposes for which the law will authorize an insolvent debtor to convey all his effects? It purports to be made for the benefit of the indorsers and securities of the grantors, and for the grantees to secure them. But it is evident the intent of the parties went much farther; to compel the discharge of 'the grantors from all their debts, by locking up from every creditor wbo would not discharge them every part of the estate of the grantors.” “Does the law allow an insolvent debtor to make this bankrupt law for himself? By our law a debtor’s property is liable to attachment by any creditor ; and, on the other hand, a debtor may prefer one creditor to another, by paying his debt either in • cash, or by conveying so much of his estate as will be adequate to the payment. But the creditor must be a party assenting to this payment or conveyance. If he be not, nothing passes to him, and nothing passes from the debtor, and his estate intended to bo conveyed remains liable to attachment by any other creditor.” Again, he says, “ We do not admit that an insolvent debtor can convey his estate in trust to pay his creditors without their consent.” “The intent of the parties, apparent from the deed, was not the true intent, which was the pro rata payment of the other creditors on their discharging the grantors; the deed, therefore, was on a confidence not expressed, for their own benefit, reposed by the grantors in the grantees. We say for the benefit of *the grantors, because they expected; in this manner, to obtain a discharge from the debts, on paying a part of them.”
*271 In Ingraham v. Geyer, 13 Mass. 146, the court held an assign-, ment void conditioned for such creditors as should within four months release all their claims against the assignor, although that was not the sole ground of the decision. Parker, Chief Justice, says, “It is voluntary on the part of the debtor and involuntary on the part of the creditor. It has no legal consideration ; for the •debts of the creditors who are to become parties are not discharged at the time, and it shuts out from a participation in the funds all the creditors who will not give an absolute discharge from all their debts. There is, indeed, but one party to the indenture, viz: the assignor, for the persons named are his agents until the creditors sign the instrument. Such an assignment can not be supported.”
In Burlingame v. Bell, 16 Mass. 324, the court held that a fraudulent assignment created no lien in favor of the assignee and says, “the man who fraudulently receives the property of another to prevent its being attached, ought not to have the right against the -will of the creditors whom it is attempted to defi'aud, to have the opportunity to perfect the fraud, by disposing of the goods, and leaving the creditors his liability only for his security.”
In Harris v. Sumner, 2 Pick. 129, the court held that an insolvent debtor could not transfer his whole property in such a manner as to make provision for himself, and to lock it up from those of his creditors, who did not feel willing to accept of the remainder and discharge him.
In Borden v. Sumner, 5 Pick. 265, an assignment conditioned for a release by agreeing creditors was fully discussed by counsel, though the decision turned upon different grounds; but in page 267, the court express the opinion that the point has never been decided in that state.
In Johnson v. Whitwell, 7 Pick., Judge Wild says, “An arrangement to secure property from attachment for the time being, though ultimately to secure the rights of all the creditors, is against the policy of the law — an attempt to hinder creditors in the prosecution of their lawful actions. Such attempts to cover the property from legal process, are unlawful, *and although no moral fraud was intended, yet it was a legal fraud, and can not be set up against a creditor.”
In the cases of Marston v. Coburn, 17 Mass. 454; Andrews v. Ludlow, 5 Pick. 28; Lupton v. Cutter, 8 Pick. 298; Cox v. Adams, *272 5 Greenl. 245; DeCaters v. LeRoy Chaumont, 2 Pick. 491; and Canal Bank v. Cox, 6 Greenl. 395, assignments with conditions for a release by assenting creditors were investigated, and held valid, though no objection was made on account of that clause.
The case of Halsey v. Whitney, 4 Mason, 206, has been confidently cited as conclusive upon the point in controversy. In that case the court did hold an assignment with the condition of a release valid; but the judge places his decision upon wbat he took to be the practice in Massachusetts. In page 230, he says, “ When we take into view the great length of time' during.which stipulations of this nature have prevailed in this state without objection, there is much reason to believe that the profession have deemed1 the law settled in favor of the debtor on this point. But I am free to say, that if the question were entirely new, and many estates had not passed upon the faith of such assignment, the strong inclination of my mind would be against the validity of them.”
The decisions in New York, although not direct upon the naked point presented in the case in hearing, tend strongly to convince us how the rule of law is esteemed in that state. Chancellor Kent, in Leavring v. Brinckerhoof, 5 Johns. Ch. 332, held a partial assignment, upon condition of a release by creditors, as of pernicious tendency, if not fraudulent. He says, “a power of coercion.over the creditor with such resulting trusts to the grantor, in ease the-, coercion should not be successful, was deemed by the Supreme Court, in Hyslop v. Clark, 14 Johns. 458, to be a badge of fraud and not a fair and lawfnl assignment.” The assignment in the case of Hyslop and Clark was to a trustee, for such creditors as should release, and in case any refused to release, their proportions to be paid to such other creditors as the assignors should appoint, and the overplus to the assignors. Judge Yan Ness, in giving the opinion of the court, expressed his conviction that the assignment was, in judgment of law, fraudulent and void. “ One object (he said) evidently was to coerce the ^creditors to acquiesce in the terms offered to them. The language held to them is this: 1 If you will release your debts, you may participate in the benefits that may result from this assignment, but if you refuse, we will lock up our property indefinitely, in such a way that whether you ever get any part of it shall depend upon our will and pleasure.’ ” Again, he says, “if they can keep it (the property) locked1 *273 up, in this way, in the hands of trustees, and set their creditors at. defiance for three months, they may do it for three years, or an indefinite period. I think, therefore, that this part of the assignment is void under.the statute of frauds.; and that it would be establishing the most dangerous precedent, to declare it to be valid.”
In Austin v. Bell, 20 Johns. 442, an assignment conditioned for a release by assenting creditors, and for the reservation of the. shares of those refusing to release to the grantor, was held void,, and the assigned property held subject to levy on execution, Chief Justice Spencer, in giving the opinion of the court in that case says, page” 150: “This is not only an attempt to coerce creditors, and to place the property beyond their reach on execution, but it is the reservation of property which ought to be devoted to the payment of their debts to their private use. Without in the least impugning the doctrine that a man indebted has a right to give preference to creditors, I am bound to say that a deed which does not fairly devote the property of a person overwhelmed with debt, to the payment of his creditors, but reserves a portion of it to himself, unless the creditors assent to such terms as he shall subscribe, is, in law, fraudulent and void, as against the statute of frauds, being made with intent to delay, hinder, or defraud creditors of their just and legal actions.”
In Mackie v. Cairns, 1 Hopk. Ch. 404, Chancellor Sanford says that when a debtor “transfers his property upon the condition that his creditors, who are pursuing their legal remedies, shall relinquish their remedies, such a transfer is plainly made to coerce the pursuing- creditors ; it directly impedes the course of law and justice, and it must be void.” Again, page 406, he says; “ Where such assignments are made merely for the payment of debts, they are often convenient to creditors as well as debtors, and they seem to involve no great evil. But *when the debtor is allowed to proceed beyond the single object of paying his'debts, such assignments become pregnant' with great mischiefs.” “ If he may assign all his property, in trust, partly for himself and partly for his creditors, and may allot to some of his creditors absolute payment, and to others payment upon condition that they shall do or not do acts dictated by himself, he is, indeed, armed with a formidable power. If a debtor may, by any machinery of his own contrivance, either reserve his property for his own use, or wield it *274 in such a manner that his creditors can not reach it in due course ■of law, or can not reach it without great difficulty, he becomes the master, and holds the power of coercion.”' In page 407, he says: “ It is only against the property of a debtor that our laws have any efficacy, and the laws concerning conveyances, made in fraud of creditors, are now the only efficient check upon the power uf disposition in the creditor. While assignments for -the payment of debts must be supported, I can not perceive that either law, equity, or policy, requires that such assignments should be sustained where they are complicated with trusts and followed by consequences so injurious and vexatious to creditors. Assignments containing the provisions which appear in this case are of recent invention, and if they can prevail, they will, to a great extent, afford to debtors a secure triumph over their creditors.” ■Chief Justice Savage, in the same case, 5 Cowen, 580, esteems it a conceded point that a man can not put his property beyond the reach of his creditors, and he says: “ When a debtor fails from misfortune or folly, or from dishonest motives, his property in moral justice belongs to his creditors. When he appropriates his property to his own use the act becomes fraudulent, nor does it lie in his mouth to prescribe terms to his creditors. The law is open to them. They have a right to pursue their debtor in the mode pointed out by law, and any act which obstructs them in their pursuits is against law, and, of course, void,” as against creditors.
I have examined the foregoing cases, because it seemed to be assumed that our decision, if against the validity of the assignment, would contravene the authorities. It is somewhat remarkable that amidst all the strong language used *on the subject, so little upon the simple question under consideration is embraced within the decisions. The case of Ingraham v. Wheeler, 6 Conn. 277, is full in point upon the case in hearing. There the assignment was to pay certain preferred creditors, and the residue to such others as should, within six months, execute a discharge, and the court held it void. In page 283, Judge Brainard says : “ No insolvent debtor has a right to prescribe terms to his creditors; ‘ to say to them take up with the crumbs on my own terms or have nothing.’ Besides, if their creditors do not see fit to comply with their terms, where is the residue ? The answer must be, in the hands of the trustees of the bankrupt’s own creation, and for ■his own use and benefit, a trust necessarily resulting. I, there *275 fore, lay this instrument totally out of the question as being wholly void, and that upon the face of it.”
The District Court of the United States in Maine, in Lord v. Brig Watchman, in April, 1832 (see Amer. Jurist, Oct. No., p. 296), has fully examined this subject. This court holds “ that á transfer by a debtor of his property, which, in its effect, would delay the creditor’s remedy against the estate for an indefinite period, unless they would consent to take a less sum than their whole debt in satisfaction, or consent to discharge the debtor, on different terms from those borne on their contracts, is a conveyance made to delay and to defraud creditors. The object of such a conveyance is to coerce the creditor to discharge the debtor from his contract without his fulfilling his obligations.” “ No argument is required to prove such an intent illegal.”
It seems to us clear, upon authority and the reason of the thing, that the clause in the assignment of J., E. & Co., prohibiting any creditor from availing himself of any portion, except within ninety days he executed a release for his whole debt, is a manifest attempt, on the part of these debtors, to place all their property beyond the reach of creditors, by ordinary legal process, and coerce from them a release of their entire demands upon the possible contingency of realizing something out of the effects, after the expenses, securities, and preferred creditors are satisfied, and as such is void against creditors. The case before the court is a ^strong one to show the injustice of such proceedings. The debtors, the trustees, and only three or four of a large number of creditors have •executed the assignment, while, by its operation, property to the amount of nineteen thousand dollars, is held under it beyond the reach of legal process. An effort is made by it to procure releases from the general creditors, without the possibility of their obtaining one cent. The preferred creditors alone, who are postponed till the expenses, securities, and fees arc paid, have claims upon this nineteen thousand dollars for upward of thirty thousand dollars ? Can this be considered as fairly devoting the property of insolvent debtors to the payment of their debts?
Our statute of frauds makes void all assignments of goods in trust for the use of the assignor, and all conveyances of every-kind made with intent to defraud creditors of their debts- 29 Ohio L. 118. The variations between the provisions of this and the English statutes are not deemed material, in any view of the subject *276 before the court. The principle is, that a failing debtor shall' neither make assignments of his effects for his own benefit, nor lock them up beyond the reach of legal process, unless without consideration he obtains a release of all his debts. No slight variation in the terms of the assignment, will affect the principle, when the design is evident to defeat a creditor of his' resort to-the goods, or compel him to release.
The case must be sent to a master to report the extent of the effects which passed into the hands of the assignees, and their present situation, and the amount of the proceeds, if disposed of.