### BROWN vs. KNOX, BOGGS & KNOX.

1. The courts of this state, in determining the validity of an assignment made in another state, will be governed by the laws of Missouri.

2. An assignment by a debtor of all his property to trustees, for the benefit of such creditors as should, within a given time, execute a release, is void.

3. Where the schedule, annexed to a deed of assignment, contains only a list of the preferred creditors, without specifying the amount of their several claims, such omission will not invalidate the deed. if it be unexceptionable in other respects.

Error to the Circuit Court of St. Louis county.

*H. R. Gamble for Plaintiff in error.*

1. That the assignment is void on its own face, because it imposes the condition of executing a release by the plaintiff, and by creditors in like condition, before they can take any interest in the trust fund: 5 Ohio Reports 293. 11 Wendall 187. Mr. Justice Story in 4 Mason's Reports 206 sustains

an assignment with this clause requiring a release upon what he considers the then weight of authority. But examining the authorities which preceded that decision of Judge Story, it will be seen, that there was no such preponderance of authority in favor of such assignments as was equal to his own opinion to the contrary.

Chief Justice Tilghman in Lippencott vs Barker, 2 Binney 174, confines his judgment to the circumstances of the case then before the court, and expresses his distrust of the legality of such assignments. Chief Justice Marshall in 7 Peters 613, while he yields to the Pennsylvania law in a case arising under it, expresses the doubt of the court as to validity of such assignments upon principle.

The authority of Massachusetts decisions is not considered as decisively on either side of the question, as is said by Judge Story in 4 Mason 229. The authority of the New York cases ending with 11 Wendall, is decidedly against such assignments; and the decision in 5 Ohio Rep., made upon an able review of the whole course of decision by other courts, is of great weight against the assignment in this case.

2nd point. That the assignment is fraudulent, as against the plaintiff, because there is no schedule of the preferred debts. See Angel on assignments 71. 4 Mason 219. The case in 3 Missouri Reports 252, has no likeness to the present, in this, that the assignment there, required no release.

3rd point. That there was no evidence of the existence of the preferred debts. 5 Mo. Rep., 485 and 463.

4th point. That the trust created by the deed after paying the preferred creditors, and those who agree to release, is for the benefit of the grantors, and not for the other creditors generally; so that there is, substantially, a reservation, for the benefit of the debtor, while a portion of the debts remain unpaid, Hyslop vs. Clark, 14 John Rep. 458. Austin and others vs. Bell, 20 John Reports 442.

The view of this clause, as taken by Judge Story in 4 Mason that it only operates to create a resulting trust which the law itself would create; while it is true in fact, is no answer to the objection that this clause gives character to the

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

instrument, and carries out the purpose of hindering and delaying the non-assenting creditors. If a release could rightfully be required of any creditors, honesty would seem to demand that the surplus, after paying such creditors, should, without coming back to the debtor, be at once appropriated to the payment of his other debts. If this clause is void, as creating a trust for the benefit of the grantor, then the whole deed is void, 20 Johns Rep. 442.

*Spalding for Appellee.*

1. The requiring a release does not invalidate the assignment. Angell on assignment 96–105, 4 Mason Rep. 206. 3 Price's Rep. 6.

2. The want of, or defect in, schedules of property conveyed, or creditors provided for does not make it void. 3 Mo. Rep. 252, Deaver vs. Savage et al. Angell on assignment 71. 7 Peters Rep. 614.

*Opinion of the Court delivered by Napton Judge.*

This was an action of assumpsit brought by George Brown against John Knox, James Boggs and James A. Knox upon sundry notes executed by them to William McKee and co., and endorsed to plaintiff: an affidavit was made that the sum due, after giving all just credits, was at least 18,000 dollars, and an attachment was issued, upon which various persons, in different parts of this State, were summoned as garnishees.

William Wilson, and David Knox interpleaded, and claimed all the debts and effects attached. The issue thus made up, between the interpleaders and the plaintiff, was submitted to the court sitting as a jury, who found in favor of the claimants. The plaintiff moved for a new trial, because the finding was against law. against evidence, and against the weight of evidence; and, because the deed of assignment, offered in evidence, was void. The motion was overruled by the court, and a bill of exceptions taken to the opinion of the court.

From the bill of exceptions it appears, that in 1825, John Knox and James Boggs were in partnership, in Philadelphia, under the firm of Knox and Boggs: that they then took into the concern David Boggs, when the style of the firm was

changed to Knox, Boggs and company. In 1831, David Boggs retired from the firm, and the style of the firm was again changed to Knox & Boggs. In January 1836, James A. Knox was admitted a partner, but brought no capital into the concern, and received only one tenth of the profits. The firm was then styled Knox, Boggs and company, and continued thus until May 1837, when an assignment was made of the effects of the firm of Knox and Boggs, and Knox, Boggs and company to Wilson and Knox the interpleaders.

The assignment is made of all the property of the firm, both joint and several, and executed by all the partners: notices of the same were published in the Gazettes of Philadelphia, and circulars sent to the debtors of said firm. It was proved, that the assignees forthwith took possession of the property and effects assigned, and have been ever since acting in discharge of the trust. It was also testified by a witness, who declared himself to be a lawyer of Philadelphia, that the deed was drawn up by him, and was in the usual form of such conveyances in Pennsylvania, and, by the laws of Pennsylvania, was good.

The trusts declared in the deed are:

First. That the trustees shall dispose of the property and collect the debts assigned.

Second. Out of the proceeds pay the expenses of the trust and retain a compensation to themselves.

Third. Out of the separate estate of each partner pay the household and family expenses &c., of each partner respectively.

Fourth. Pay debts in certain specified schedules, to the number of four, and

Lastly. To pay the residue to all such of their creditors as would execute a release within the term of three months, if they lived within the United States, or nine months, if they lived without the United States.

The deed contains this further provision, that after the payment of all the debts therein specified, the surplus, if any, shall revert to the assignors.

The schedule annexed, contains a list of preferred creditors

MAY TERM
1840.

Brown
vs.
Knox, Beggs
and Knox.

with a description of the nature of their respective claims, as for money lent, acceptances. &c., but does in no instance show the amount of the claim. The amount of assets assigned is set down in the schedule as exceeding half a million of dollars, and creditors, to the amount of an hundred thousand dollars, came in and executed releases. There was no proof as to the bona fide character of the preferred debts.

It was admitted, that plaintiff resided in Baltimore, and that all the debts, effects &c., in the hands of the garnishees, were embraced in said deed of assignment, and the only dispute is, as to the validity of the assignment.

Before examining this question, it will be proper to dispose of a preliminary one started in the argument of this cause. The interpleaders claiming under a deed made in Pennsylvania, and the plaintiff being a resident of Baltimore, it is urged, that principles of comity require, that the validity of this instrument should be determined in this court, by the laws of Pennsylvania. It is not very well perceived, how the law of comity can be applicable to the consideration of an instrument which is attacked on the ground of fraud in fact, or because its provisions so far contravene the established policy, or express enactments of our law, as to constitute fraud per-se. But admitting that our courts would be bound, upon principles of comity, to give effect to an assignment made in Pennsylvania, as against creditors living in that State, upon what principle must the Pennsylvania law be administered here, to a creditor who resides in Maryland? Why may not he insist on the *lex domicilia* with the same justice as the assignors who live in Philadelphia? The *lex 'loci contractus* can hardly apply in this case, inasmuch as the creditor suing, never acceded to the terms of this assignment, and was no party to the instrument; and the law of his domicil may as well be applicable to the contract on which he sues, as the law of the interpleaders domicil to that contract on which they rely. The only reasonable and fair rule, in a case of this character, seems to be, to administer the law of this State, the State in which the property lies, where the suit is brought, and whose laws are invoked for the protection of the rights of the respective parties. Whatever

*The courts of this state, in determining the validity of an assignment made in another state, will be governed by the laws of Mo.*

may be the construction given to instruments of this character in Pennsylvania then, I shall proceed to consider the light in which they are viewed by the law of Missouri, in the opinion of this court.

MAY TERM
1840.

Brown.
vs.
Knox, Boggs
and Knox.

The first and most important question involved in this consideration, is the validity of a stipulation for a release in the instrument of assignment under which the interpleaders claimed. It is conceded that this is a question of the first impression in this state. The point has been neither colla·terally, or directly, before the court in any previous case.— It is conceded also that the adjudication of the courts of our sister states have, on this subject, been various, conflicting and unsatisfactory. The weight of authority has been claimed on either side, and I apprehend that a very brief examination of the state of judicial opinion will make it obvious that this court may, with propriety, and a due respect to the opinions of other tribunals, look only to justice, to reason and morality, and to the letter and spirit, and policy of our laws, for their rule of action.

In 1826, Judge Story, in the case of Halcey v. Whitney, (1 Mason's Rep. 206,) reviewed the state of judicial opinion in the United States, up to the time of that decision. He prefixes his own opinion, untrammelled by authority. "This objection" (says Judge Story, speaking of a stipulation for a release) "has struck me to be of great force, and I have paused upon it with no small hesitation of opinion. Where a debtor assigns all his property for the benefit of all his creditors, without stipulating for any favor to himself, he cannot be said to lock up his property from his creditors.— The most that can be said is, that he locks it up from one by giving it unconditionally to all. But when he stipulates for a release, he surrenders nothing except upon his own terms. He attempts to coerce his creditors by withholding from them all his property, unless they are willing to take what he pleases to give, or is able to give, in discharge of their debts. This is certainly a delay, and if the assignment be valid, to some extent, a defeating of their rights. It is not sufficient to say that it is a proposition to creditors; so would be a condition by the debtor to receive a gross sum. The

U

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

object and nature of the proposition are to be considered, in order to decide whether it be fraudulent or not. Has it not a tendency to obstruct the common rights of the creditors? Is not its design to prevent creditors from receiving compensation out of the debtors property, without yielding up some portion of their debts, and conferring on him a substantial benefit, which he has no legal claim to demand?

The learned judge then proceeds to review the adjudicated cases, and arrived at the following conclusions, after examining the cases of Leaving v. Binkerhoof, (5 Johns. Ch. R. 329,) Hyslop v. Clark, 14 John. R. 459,) Austin v. Bell, (20 John. R. 442,) he admits that the courts of New York, though the point had not been expressly determined, had evinced a decided leaning against the validity of such stipulations. In Massachusetts, the question remained in Judge Story's opinion, *in equilibrio*, so far as judicial action was concerned, but the prevalence of such stipulations without objection in that state, induced him to conclude that the opinion of the profession was decidedly in favor of the debtor, on this point. In Pennsylvania, but one decision had been made, (Lippencott v. Barker 2 Binn. R. 174,) at the time of Judge Story's decision in Halcey v. Whitney, and in that, the stipulation was sustained, but was sustained, as Judge Tilghman declared, under the particular circumstances of the case, and was not designed to settle the general principle. Judge Brackenridge declined going even to that extent, but declared the stipulation void, under all circumstances. But one British authority was alluded to by Judge Story, and that was a case in the exchequer, (Braddock v. Watson 3 Price Rep. 6,) in which the assignment was held good, notwithstanding the stipulation for a release.

The conclusion to which Judge Story arrived, on an investigation of these authorities, was this: "I am free to say, that if the question were entirely new, and many estates had not passed upon the faith of such assignments, the strong inclination of my mind would be against the validity of them, as it is, I yield without reluctance to what seems the tone of authority in favor of them."

Such was the state of judicial opinion in 1826, when

MAY TERM
1840

Brown
vs
Knox, Boggs
and Knox.

Judge Story yielded his own convictions to what he regarded as the "tone of authority." We will see how the authorities stand since that period, and for that purpose I avail myself of the compilation read at the bar, (Angel on assignments,) and take the statement of its author for the titles and character of the decisions as late as 1835. In 1833, the case of Brashear v. West and others was decided by the Supreme Court of the United States, 7 Peters R. 608. In that case Chief Justice Marshall, in delivering the opinion of the court, observed: "The objection, (to a stipulation for a release,) is certainly powerful that its tendency is to delay creditors. If there be a surplus, this surplus is placed, in some degree, out of the reach of those who do not sign the release, and thereby entitle themselves under the deed.— The weight of this argument is felt. But the property is not entirely locked up, a court of equity, or courts exercising chancery jurisdiction, will compel the execution of a trust and decree what may remain, to those creditors who have not acceded to the deed. Yet we are far from being satisfied that, upon general principles, such a deed ought to be sustained.

But whatever may be the intrinsic weight of this objection, it seems not to have prevailed in Pennsylvania. The construction which the courts of that state have put on the Pennsylvania statute of frauds, must be received in the courts of the United States."

Judge Marshall here apparently yields his own conviction, that upon general principles these stipulations cannot be sustained, to what he supposes to be the settled construction, he relies on the cases already alluded to, and referred to, by Judge Story, in the case of Halcey v. Whitney, of Lippencott v. Barker and Pierpoint and Lord v. Graham, (4 Wash. R. 232). Let us examine this case of Lippencott v. Barker, upon which Judge Marshall and Judge Story rely as authority for declaring the setted law of Pennsylvania. Chief Justice Tilghman delivered the opinion of a majority of the court in that case, and after sustaining the assignment says: (2 Binn. R. 182,) "I beg, however, to be distinctly understood, that my opinion is confined to the circumstan-

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

ces of the present case, for there are many and strong objections to deeds of assignment made without the privity of creditors, and excluding all who do not execute releases." Judge Breckenridge declared: "I think it to the let and hindrance of creditors, and that such disposition is void both at common law and by statute; though not fraudulent in fact, yet fraudulent in law and therefore void."

One would suppose that there was nothing very decisive in this opinion in favor of these stipulations; Judge Tilghman expressly declaring that he was not to be understood as sustaining the general principle, but justifying his conclusions on the particular circumstances of the case, and Judge Breckenridge avowing his convictions that no circumstances could make such deeds valid in law.

In Mackie v. Cairns, in New York, (Hopkins Ch. R. 373, 5 Cowen R. 547,) the assignment provided that if any of the creditors should have attached, such creditors should be excluded, unless they would relinquish their attachments; and this provision was held illegal and void. In De Caless v. Le Roy de Chaumont (2 Paige's Chan. Rep. 491) we are told by Mr. Angel, (Angel on assignments 107,) an assignment of the debtor, which contained a provision for the distribution of the effects, among such of the creditors as should come in and accept the provision made for them, and execute releases, was carried into effect by the court of chancery, without any intimations from the court or counsel that such a stipulation was illegal. Here the point, it seems, was not made, but in the same state, in the subsequent cases of Armstrong v. Byrne, (1 Edwards Ch. R. 79,) and Lentilhon v. Moffat, (ib. 451,) such stipulations were repudiated by the court, and pronounced a hindrance and delay of creditors.

In Massachusetts, the decision in Halsey v. Whitney seems to have been followed up to 1829, and since that time we have no information that the validity of assignments, containing stipulations for releases, has been questioned in that state. Such, also, has been the current of decisions in Rhode Island, (Angel on assignments p. 112). In Maine the same conclusion was arrived at, in the case of Fox v. Adams, (5 Greenleaf R. 245,) and on the authority of the case

MAY TERM
1840.

Brown
vs.
Knox. Boggs
and Knox.

·of Halcey v. Whitney, but subsequently to that decision, the district court of Maine held, in the case of Lord v. Brig Watchman, (Angel 113,) that an assignment by an insolvent ·debtor of all his property to trustees, in trust for the benefit of such of his creditors as should become parties to the assignment and release their debts, was fraudulent. A similar adjudication has been made in Connecticut, (Angel on assignment, p. 114).

·Such is the relative weight of authority, since Judge Story's decision in Halcey v. Whitney, up to 1833, and on this state of facts, the author of the compilation on assignments concludes that the weight of American authorities was, at that date, in favor of the validity of such stipulations.

It remains to be seen how the authorities have been since the publication of that work. The case of Atkinson & Rol-·lins v. Jordan, Ellis & co., in Ohio was decided in 1832, previous to the publication from which I have quoted authori·ties, but is not noticed in that work. In that case, (5 Ohio Rep. 293) the court reviewed all the authorities, and upon the weight of authority, as well as upon principle, declared such stipulations for releases, null and void. In New York, perhaps the most commercial State in the Union, the court of errors, after elaborate argument in the case of Srover v. Wakeman, determined such stipulations to be void and fraudulent. 11 Wendall 187. Judge Sutherland, after noticing the conflict of authorities on the subject, declared his opinion that it was time that some plain, simple, but comprehensive principle should be adopted on the subject. "In the absence of a bankrupt law," he proceeds, "the right of giving preferences must probably be sustained. Let the embarrassed debtor therefore assign his property to whom he pleases, but let the assignment be absolute and unconditional; let it contain no reservations or conditions for the benefit of the assignor; let it not extort from fears and apprehensions of creditors, or any of them, an absolute discharge of their debts as the consideration for a partial dividend; let it not convert the debtor into a dispenser of alms to his own creditors; and above all, let it not put up his favor and bounty *at auction*, under the cover of a trust, to be bestow-

MAY TERM
1840

Brown
vs.
Knox, Boggs
and Knox.

ed upon the highest bidder.  After the maturest reflection on this subject, I have come to the conclusion that the interests both of creditor and debtor, as well as the general purposes of justice, would be promoted, if the question is still an open one, by confining these assignments to the simple and direct appropriation of the property of the debtor to the payment of his debts.

The decisions, on this point, in England are but few, in consequence of their bankrupt laws rendering such assignments rarely, if ever, necessary.  A case determined in the Exchequer, (Rex v. Watson, 3 Price R. 6,) has been frequently referred to, by the several judges in this country who have sustained such assignments, as an authority in support of such opinion.  The decision of the court in that case cannot, I think be entitled to great weight here, when we reflect that it was the policy of the British legislature, as evinced in their bankrupt laws, to relieve debtors from future liability, on giving up their entire property to their creditors.

On reviewing these various and conflicting opinions, it will be seen, that the opinions of three eminent jurists, Judge Story, Chancellor Kent and Judge Marshall were against the validity of these stipulations for releases, notwithstanding two of them decided on the supposed authority of prior decisions, in their favor; and it is worthy of remark, that scarcely any Judge, in deciding favorably to such assignments, has failed to accompany such decision with a declaration, either of his marked averson to these stipulations, upon principle, or of great doubts as to their propriety and legality.  In Ohio, New York, Maine and Connecticut, courts of the highest authority have pronounced them fraudulent, whilst in Massachusetts, Rhode Island and Pennsylvania, the decisions have been conflicting, but preponderate in favor of the validity of the stipulations for a release.

In this state of judicial opinion, it will not be considered as assuming too much, to say, that this court may safely take up the subject, untrammelled by authority, and pronounce that judgment which a fair construction of our statute of frauds, and the general policy of our laws will justify.

In examining this question on principle, the only matter of astonishment it seems to me, is, that courts, in this country, could ever have been induced to give a judicial sanction to what seems to be neither more or less, in its incipient state, than a species of *mercantile legislation.* Debtors have succeeded, by these contrivances, in making bankrupt laws for themselves, notwithstanding the legislative bodies, both federal and state, have declined to pass laws to relieve them from their liability to pay their debts. This alone, in my opinion, constitutes a fatal objection, to any assignment, in which the debtor makes over his property, on condition that his creditors shall release him from future liability, shall it be said, that the debtor has a right to make terms, and that, when he succeeds in making such as are beneficial to himself, and such as the law of itself would not give him, it is a matter of contract and therefore valid? To make a contract of any validity, I suppose it will be granted, there must be parties to such contract, capable of contracting, and voluntarily assenting to such contract. How can the creditor be said to give any assent to this contract, when in point of fact, if these assignments be valid, he is under moral duress when he signs the deed. The debtor has his creditors completely in his power, and says to them: "you may take this fifty cents in the dollar of all I owe you, or nothing." There is no choice left with the creditors, but to come in and take half or a fourth of their debts, as the case may be, and then, in consideration of this favor, release all claims for the balance.

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

It has been said, that the judicial decisions, against the validity of these instruments, have been a species of judicial legislation, enlarging the operation and bearing of the statute of frauds. It seems to me that with much more propriety it might have been said, that the decisions sustaining these assignments have been judicial legislation, not enlarging the operation of any statute in existence, but creating, what our Legislatures have refused to make—an act of bankruptcy. The statute of frauds declares that all deeds made with intent to hinder and delay creditors, shall be deemed fraudulent and void. I do not place the invalidity of these

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox

stipulations for release, upon the sole ground that they occasion a delay, and are therefore within the letter of the statute. Delays to some extent are occasioned by all assignments, whether containing such a stipulation or not, though the delay is somewhat greater in the one case than in the other. There might be much difficulty in determining precisely what amount of ... the deed, and where it is not unreasonable, ... in this particular deed, it would not, of it ... to warrant a court in declaring such deed ... e. But in addition to the delay gained ... a benefit, and a most material benefit, ... of itself does not give him, and obtai s it ... of compulsion on the creditor.

Whatever may be said in ... policy and humanity of a bankrupt law, and it ... tended here to question them, our legislature has ... een fit to enact any law by which the debtor can escape his liabilities by delivering up his property. On the contrary, the spirit of our legislation, so far as it has gone on this subject as evinced in the insolvent laws enacted, excludes all debtors, who seek to give preferences to one creditor over another, from the benefits to be derived from those laws. It appears then to be in strict conformity to the letter and spirit of our statute of frauds, consonant to the general policy of our statutes, and I think I may add, according to sound views of morality and common honesty, that a debtor should not have the privilege of dictating terms to his creditors, and of excluding a bona fide creditor from all benefit in his property, who will not accede to those terms. Such is the view entertained by every member of this court, and the circuit court ought, in my opinion, to have declared this assignment fraudulent and void, as against the rights of the attaching creditor.

An assignment by a debtor of all his property to trustees, for the benefit of such creditors as should, within a given time, execute a release, is void.

This view of this assignment might well dispose of this case, but other objections have been taken, which as they are fairly up, I will proceed to notice. The schedule annexed to this assignment was objected to, as imperfect, insufficient, and a badge of fraud. The schedule contained a list of preferred creditors, but did not specify the amount of their

several claims.  In my opinion, if this deed were unexceptionable in other respects and imposed no terms on the remaining creditors, no such omission would be sufficient of itself to invalidate the deed, nor would it raise any presumption of fraud.  But in this case, it was very material, to enable the creditors to determine whether they would accept the terms held out or not, that they should have the means of ascertaining the probability of deriving any benefit from the conveyance.  A mere list of the names of the preferred creditors could throw no light on this subject.  Some estimate of the aggregate amount of preferred claims, if not the specific items, would seem to be reasonable and attainable.  This position is sustained, I think, by the observations of Judge Story in the case of Halcey v. Whitney, where a a similar objection was made, but was not sustained by the court.  The objection taken there was, that the schedule was not perfect, but allowed alterations and additions to be made to the schedules, by the mutual consent of one of the parties to each part of the assignment.  The Judge observed, " The trustee must be presumed to act honestly, and does in fact covenant with all the parties for a faithful performance* of his duties.  A clause reposing confidence in him in the discharge of his duties can surely not be deemed fraudulent from that fact alone.  If the trustee were notoriously insolvent, or of bad character, (which is not pretended here,) such a clause might be deemed an auxiliary ground for presumptive fraud.  But a power of this nature, simply because it may be abused, is not to be deemed unreasonable or fraudulent."

It is, I think, fairly inferable from this reasoning, that if the list of preferred creditors was not merely imperfect, but contained no statement of the extent of their claims, no doubt would have been entertained of its suspicious character, in an instrument requiring the creditors to accept terms and conditions.

Is was further objected to the efficacy of this assignment, so far as the attaching creditor was concerned, that no proof was given of the bona fide existence of the preferred debts.  I am not prepared to say, that this circumstance of

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

Where the schedule, annexed to a deed of assignment, contains only a list of the preferred creditors, without specifying the amount of their several claims, such omission will not invalidate the deed, if it be unexceptionable in other respects.

MAY TERM
1840.

Brown
vs.
Knox, Boggs
and Knox.

itself would create any presumption against a deed otherwise fair, and it would seem to me proper, that some suspicion should first be cast upon the transaction, by the party seeking to overturn it, before the persons claiming under the deed could be required to prove that the debts set forth were genuine and bona fide. A majority of the court, however, entertain a different opinion on this point and think such proof always necessary to establish the deed in opposition to the claims of an attaching creditor. 5 Mo. Rep'ts. 485, 463.

The only remaining objection to this deed is that the trust created by it, after paying the preferred crediors and those who agree to release, is for the benefit of the grantors, and not for the other creditors generally. This objection seems to be resolvable into the first, and principle one, urged to the whole instrument, the requisition of releases. If the deed containing a stipulation for releases, were valid, the trust avowed on its face that the remainder should return to the assignors, would amount to no more than the law itself would create. It would only make the delay greater, but would certainly not protect the property from the process of the courts. For the law would also declare, that after reverting to the assignors, it would be a mere trust in their hands for the benefit of the unpaid creditors. This objection therefore, forms a part of the first objection and is so viewed by this court.

The judgment of the circuit court is reversed and the cause remanded.