## DUGGAN *v.* BLISS.

A condition, in a deed of assignment, requiring the creditors to release the assignor from all claims before receiving any benefits under the deed, the surplus returning to the debtor and not to the non-releasing creditors, renders the deed fraudulent and void.

*Error to County Court of Arapahoe County.*

REPLEVIN.—Declaration in the *cepit* and *detinet*. Pleas *non cepit*, *non detinet*, property in defendant, and property in one J. H. Grout.

Bliss, the defendant in error, being the assignee of J. H. Grout, brought this action in replevin to recover certain property seized by Duggan, the plaintiff in error, a constable, under three writs of execution issuing out of a justice court against Grout in favor of A. Bradley & Co., creditors of Grout. The cause was tried without the intervention of a jury, and Bliss had judgment. The material portions of the deed of assignment under which Bliss claimed to recover are set out in the opinion.

Exceptions to the finding and judgment of the court were duly reserved, and the following errors are assigned in the record in this court:

"First—The county court erred in admitting in evidence the deed of assignment made by the said James H. Grout to the said William M. Bliss.

"Second — The said court erred in finding the property in the writ and declaration mentioned, to be in the defendant in error.

"Third — The said court erred in giving judgment in favor of the defendant in error, and against the plaintiff in error, for the said property and for costs."

Mr. JOHN W. BLACKBURN, for plaintiff in error.

Mr. V. D. MARKHAM, and Messrs. PATTERSON & CAMPBELL, for defendant in error.

STONE, J.   The sole question to be decided in this case is, whether the assignment made by James H. Grout is fraudulent and void on its face, as being calculated in law to hinder, delay and defraud his creditors for whose presumed benefit the assignment is made.   The chief objection to the assignment arises out of a condition of release contained therein.

That portion of the deed providing for the execution of the trust by the assignee is as follows :   *   *   *   " out of the proceeds arising from the sale of the said property, goods, chattels and effects, as well as from collections, after paying the costs, charges, expenses and compensations aforesaid, he shall pay : *First* — All debts due by the said party of the first part to any of the following named persons : A. Bradley & Co. ; Hibbard, Spencer & Co. ; Adams & Westlake ; William Blair & Co. ; Thomas White ; Comstock Castle ; George Brond ; George Tritch ; Perry & Co. ; Tappan & Co. ; Manning, Bowman & Co. ; N. M. Simmons ; G. J. Cottrill ; Craig Brothers & Chandler, who shall, within sixty days from and after the date of these presents, that is

to say, on or before the first day of August of the present year, execute to thé party of the first part a full release to the amount of their respective claims. The said debts to be paid in full, if there be sufficient proceeds for that purpose, otherwise to be ratably and in proportion to their respective amounts. The above-named creditors being a full list of the creditors of the said party of the first part who have claims against him for account of his business aforesaid. *Second* — After fully paying and satisfying all such creditors as may have executed the release and discharge specified, in the time specified, then to pay and sat· isfy any of the above-named creditors who have refused or neglected to execute such release and discharge. *Third* — The surplus, if any, to be paid to the party of the first part, his heirs, executors and administrators." * * *

Does the condition of release affect the validity of the assignment?

This question, although raised for the first time in this State, is not a new question to the courts.

The innumerable business failures in the commercial world have, in the last fifty years, flooded the courts of this country and England with cases involving every conceivable question pertaining to the rights and liabilities of debtor and creditor under deeds and contracts growing out of bankruptcies, assignments of debtors and composition of creditors, among which the question raised in this case has, in our American courts, received its full share of discussion. We shall not attempt a full review of the cases involving this question, since it has been so frequently done in the leading cases, that a repetition here could add nothing to the stock of knowledge already possessed by the profession on this subject. Whether a condition of release in an assignment of the property of the debtor for the benefit of his creditors renders the deed fraudulent and void, either *per se* or as against objecting creditors under the statute of 13 Elizabeth, 5, has been variously held by the courts of last resort in the several States.

The English cases involving this precise question are so few and meagre, and so far modified by the policy of bank· rupt laws, that they can scarcely be regarded as authoritative on the point in this country.

Counsel for defendant in error cite Burrill on Assignments (3d ed.), 232, as authority that "in England a stipulation in an assignment for the release of the debtor, as a condition of receiving the benefit of the deed, has been held valid even against a claim of the crown," but in support of this declaration the author of the text seems to rely solely upon the case of *The King* v. *Watson*, 3 Price (Exch.), 6, in which the principal question appears to have been, whether the assignment was not void under the bankrupt laws ; and, indeed, most of the English decisions in cases of assignment are affected by considerations arising out of their bankrupt system.

Looking to the decisions in the courts of the United States, we find considerable conflict of opinions ; some supporting such assignments, but in the majority of cases where the precise question raised here has been distinctly passed upon, uncontrolled by other considerations in the case, they have been held illegal. Where they have been sustained, has been generally in the first decisions on the subject in the earlier days of the republic, when our legal and commercial policy had but slightly departed from that of the mother country.

In Pennsylvania, Virginia and South Carolina, assignments for the benefit of such as shall release, are held valid, "being now too long established to be overthrown." 1 Am. Lead. Cas. (5th ed.) 83. In the leading Pennsylvania case, however, *Lippincott* v. *Barker*, 2 Binney, 174, Chief Justice TILGHMAN concludes, by saying : "I beg, however, to be distinctly understood, that my opinion is confined to the circumstances of the present case, for there are many and strong objections to deeds of assignment made without the privity of creditors, and excluding all who do not execute releases :" while Judge BRECKENRIDGE, in a dissenting

opinion, of ability and eloquence, pronounces the deed fraudulent and.void.

The case of *Brashear* v. *West,* 7 Pet. 608, is strongly relied on in support of the validity of such assignments. But this case coming from Pennsylvania, the decision is based on the settled construction supposed to have been given to the law of that State by the case of *Lippincott* v. *Barker, supra;* and Chief Justice MARSHALL, who delivered the opinion, after stating that "the construction which the courts of that State have put upon a Pennsylvania statute of frauds, must be received in the courts of the United States," declares : "Yet we are far from being satisfied that upon general principles, such a deed ought to be sustained."

The case of *Halsey* v. *Whitney,* 4 Mason, 206, has also been relied upon as authoritative on this point; but the learned Justice STORY, in delivering the opinion, stated the grounds on which his judgment was pronounced to be, that the decisions in. Massachusetts had left the question up to that time *in equilibrio,* but that taking into consideration the great length of time during which stipulations of this nature had prevailed in that State without objection, there was much reason to believe that the profession had deemed the law settled in favor of the debtor on this point ; and then he significantly adds : "I am free to say, that if the question were entirely new, and many estates had not passed on the faith of such assignments, the strong inclination of my mind would be against the validity of them."

The earlier cases in Maine, New Hampshire, Vermont, Rhode Island, and perhaps in Massachusetts, sustain the validity of such assignments, although the district court of Maine held the contrary doctrine in the case of *Lord* v. *The Brig Watchman,* Ware, 242. For many years, however, the statutes of all those States, except perhaps Rhode Island, have prohibited assignments containing such conditions of release.

In the first case involving this question which came into

the supreme court of Maryland (*McCall* v. *Hinckley*, 4 Gill, 129), the decree of the chancellor sustaining the assignment was affirmed by a divided court, but the learned and exhaustive opinion of DORSEY, J., against the validity of the deed, is unanswerable, and later decisions of that court, like those of Connecticut and Illinois, are to the effect that the requirement of a release as a condition of participation in the fund, the surplus resulting to the assignor, is fraudulent and avoids the deed. *Malcomb* v. *Hodges*, 8 Md. 418.

Among the States that hold squarely against the validity of release conditions in such assignments, are New York, Ohio, North Carolina, Georgia, Mississippi, Texas, Tennessee and Missouri.

The leading case in New York, and which has been followed by many of the other States, is the case of *Grover* v. *Wakeman*, 11 Wend. 190, which contains a full review of the authorities, English and American, and an elaborate and able discussion of the question upon principle, by a number of the twenty-four eminent jurists and senators who composed the Court of Errors of that day. By that and other decisions in New York, it has become the settled doctrine in that State, not only that a stipulation for a release as a condition of receiving a benefit under the deed, the surplus returning to the debtor, in exclusion of non-releasing creditors, is fraudulent, but that such a stipulation as a condition of preference, though the only penalty be the postponement of non-releasing creditors to others, avoids the deed. The principle established in *Grover* v. *Wakeman* and subsequent cases is, that although preferences are allowed, the appropriation of the property to the use of the creditors must be absolute and unconditional, and that the creation of a trust that is to operate as a coercion of the creditors into a relinquishment of part of their demands, is fraudulent and void, though no portion of the property be reserved to the debtor's own use. The law of Ohio, and that of Missouri, goes to the same extent. *Barrett & Nicholson* v. *Reed et al.*, Wright, 701; *Atkinson et al.* v. *Jourdan*

*et al.*, 5 Ohio, 294 ; *Brown* v. *Knox* ; *Boggs* v. *Knox*, 6 Mo. 302.

The earlier cases in Alabama were in support of such assignments, although the principle was condemned in several cases, but the later cases in that State have approved and adopted the general principle of *Grover* v. *Wakeman*, that an assignment for the benefit of creditors must be absolute and unconditional, without reserved benefit or attempted coercion. See 1 Am. Lead. Cas. 83.

It is insisted by counsel for defendant in error that the release clause in the deed amounts at most to a mere preference of creditors, "which right of preference has always and everywhere existed ; " but we cannot take this mild view of the case. True there is no reservation to the debtor of any portion of the property assigned, in terms, but there is none the less a reserved benefit to him in the discharge of debts which he contracted to pay ; a benefit which he seeks to secure for himself by attempted coercion of the creditors through this very " preference." The debtor in this case in effect says to his creditors : " Those of you who agree to release me from my obligations, can take all my property and divide among you ; there may be enough to pay you in full, or may not ; you take the chances of being paid in full or in part, the refusing creditors may get something ; they take the chances of getting paid something or nothing ; I take the surer chance of a discharge from my obligations in whole or in part." In short, the creditors take the doubtful chance of getting all they are entitled to, while the debtor takes the almost certain chance of paying less than he agreed to pay. If all the creditors should consent to release, there could evidently be no preference. So, too, if all should refuse. There is no absolute preference in the case.

Without expressing any opinion as to the validity of assignments creating preferences merely, it is sufficient to say that the preference here claimed is incidental to the attempted coercive discharge of the debtor. By such dis-

charge, he reaps a certain benefit. He seeks, in effect, to legislate in his own interest; to make for himself a private bankrupt law independent of statutory enactments. He seeks to execute this law he has made, and procure his own discharge by compelling his creditors to take what he has offered them. There is a positive delay of the creditors by placing the property out of the reach of their legal pursuit, and preventing a distribution within two months after the date of the deed. The creditors then are to be delayed in receiving the avails of property which ought to belong to them immediately upon its conveyance to the assignee. For whose benefit is this delay? Not for the creditors, for they will get no more after assenting to or refusing the conditions proposed than they would get at once, without any such condition. The delay is manifestly intended to benefit the debtor in order that he may secure the advantage of the coveted release to which he has no rightful claim.

In *McCall et al.* v. *Hinckley et al.*, cited *supra*, Judge DORSEY, of the court of appeals of Maryland, says: " That a model of such an assignment as that now before us could have been substituted for the old and common form of a deed of composition, is strange, indeed. And it can only be accounted for by supposing it to be the cunningly devised invention of him who, in stretching his ingenuity to rescue the debtor from the power and rights of the creditor, lost sight of the principles of both law and morality."

And Judge BRECKENRIDGE, in giving his opinion in *Lippincott* v. *Barker*, 2 Binney, 174 (4 Am. Decis. 444), declares that "it has been left to the *astutia Americana* of debtors to devise such a warehousing of effects out of the hands of the law for a time, for the benefit of particular creditors. I think it to the let and hindrance of creditors and that such disposition is void, both at common law and by statute, though not fraudulent in fact in the particular case, yet fraudulent in law, and, therefore, void. It is not simply a surrender of his property as satisfaction *pro rata* of his debts, that the insolvent has in view. He couples an

interest for himself in obtaining a discharge from that proportion of the respective debts which may remain unsatisfied. It is taking an undue advantage of the situation of the creditor to impose this condition. It is immoral to exact it. *Volenti non fit injuria* if the creditor accepts, but it is making a volunteer by compulsion, and is, in fact, a robbery. One enlightened on the principles of moral honesty, would never think of it. He would give what he had to one or more, or to the whole of his creditors, but he would never think of annexing a condition precedent or subsequent to such surrender. Of such conditions, a chancellor would not compel a fulfillment. I can think of nothing morally honest, or strictly legal, but the indefinite, unconditional surrender of the property. Pass this boundary, and I can draw no line where an assignment shall be supported and where not."

In *Grover* v. *Wakeman*, referred to *supra*, Justice SUTHERLAND expresses the views of the court upon this point as follows: "Where the assignor parts with all control over the property, and devotes it absolutely to the benefit of his creditors, without any reservation or stipulation for his own advantage, the honesty of his intention is so apparent, and the advantage to the creditor so direct and decisive, that they cannot be said to be obstructed or delayed in their remedies. But where, instead of distributing his property among his creditors as far as it will go, he places it beyond their reach by an assignment, not merely for the purpose of saving it from one particular creditor to be given to another, or to be equally divided among all, but for the purpose of enabling him to extort from some or all of them an absolute discharge of his debts as the condition of receiving a partial payment, he perverts the power to a purpose which it was never intended to cover, and which the principle, on which the right to give preferences is founded, will not justify. Why should a debtor be permitted in this way to operate on the fears of his creditors and coerce them into his own terms? It has sometimes been said in answer

to this view of the case, that there is nothing immoral or unjust in a debtor in embarrassed circumstances, and who is unable to pay all his debts, making the best arrangements in his power with his creditors, and giving the largest dividend, or the whole, to those who will settle with him on the best terms; and if he can do this while he retains his property in his own hands, there is no reason, it is said, why he should not be permitted to do it under cover of an assignment.

Parties not under legal disabilities may make such contracts as they please, and, if supported by a consideration and there is no fraud in the case, they will not be disturbed. * * * * * But the case is materially changed when the debtor first places his property beyond the reach of his creditors, and then proposes to them terms of accommodation. He obstructs their legal remedies, hinders and delays them in the prosecution of their suits, by putting his property in the hands of trustees with the view of getting an absolute discharge from his debts, and exempting his future acquisitions from all liability."

Judge VAN NESS, in *Hislop* v. *Clark*, 14 Johns. 458, states what I consider to be the sound principle upon this subject. He says an insolvent debtor has no right to place his property in such a situation as to prevent creditors from taking it under the process of a court of law and to drive him into a court of equity, where they must encounter expense and delay, unless it be under very special circumstances and for the purpose of honestly giving a preference to some of his creditors, or to cause a just distribution of his estate to be made among them all. Judge SPENCER, in *Austin* v. *Bell*, 20 Johns. 442, and Chancellor KENT, in *Seaving* v. *Brinkerhoff*, 5 Johns. Ch. 329, obviously concurred in the soundness of that proposition. The Supreme Court of Errors in Connecticut adopted it in *Ingraham* v. *Wheeler*, 6 Conn. 277, and it was most happily and impressively amplified and illustrated by the learned judge of the United States district court for the State of Maine,

in the case to which I have referred. *Lord* v. *Brig Watchman*, Ware, *supra.* "After the maturest reflection upon this subject, I have come to the conclusion that the interests, both of debtor and creditor, as well as the general purposes of justice would be promoted, if the question is still an open one, by confining these assignments to the single and direct appropriation of the property of the debtor to the payment of his debts."

And Senator TRACEY, sitting in the same case, declares: "The law does not recognize any right on the part of an insolvent debtor, to an absolute discharge from his creditors on distributing among them his estate. One who contracts a debt agrees not merely that he will pay it if his present property is sufficient, but also if his future exertions shall give him the power. In short, he pledges but the property he possesses, and his capacity to acquire property."

We have quoted this much from the matured opinions of eminent jurists, in some of the leading cases covering the question we are considering, realizing the impossibility of expressing so well and forcibly in any language of our own, the doctrine and principles which we think must apply in this case. Colorado has no statute law relating to bankruptcy, or governing the disposition of the estates of insolvent debtors. The question here considered is, therefore, an open question and must be settled by the principles of enlightened justice as well as by the principles of the common law, under the statute of 13 Elizabeth, as interpreted and applied by the highest courts of the country ; and in the conflict of authorities upon the subject, we think it will be found that the great weight of reason and authority is against the validity of assignments imposing such conditions. A late law writer lays down the doctrine upon this subject thus : A condition in a deed of assignment requiring the creditors to release the assignor from all claims before receiving any benefit under the deed, the surplus returning to the debtor, and not to the non-releasing creditors,

renders the deed fraudulent and void ; *and such a stipula-tion as a condition of preference,* although the only effect is to postpone the non-releasing creditors to a share of the surplus, renders the assignment void. The principle is, that although preferences are allowed, yet the appropriation of the property to the creditors must be absolute and uncon-ditional, and a trust which coerces the creditors into a re-linquishment of part of their claims, in order to enjoy any benefit under the deed, is fraudulent and void, although no portion of the surplus may go to the grantor." 2 Perry on Trusts, § 592.

Numerous authorities are cited in support of the doctrine of this text. And in Burrill on Assignments, the most complete work on this subject extant, the author, upon an elaborate review of the authorities upon the question before us, says (2d ed., p. 172): "Taking into consideration the opinion expressed by Chief Justice MARSHALL, in *Brashaer* v. *West,* 7 Peters, 608, it seems probable that should a case be brought before the supreme court of the United States, which could be decided on general principles and free from the controlling influence of State construction, the de-cision would be against the right to stipulate."

Many of the States have legislated upon this subject during the past forty years, and by statutory enactment, have prohibited the making of assignments containing re-servations, release clauses, and even preferences. This may be taken as an indication of prevailing sentiment, touching the principles involved in such transactions, as well as a reflex of the weight of judicial decisions.

It is conceded, that in this case there is no fraud in fact, and the question therefore is, whether upon the face of the deed itself, the assignment is fraudulent in law.

In view of the recent repeal of the National Bankrupt Act, the absence of local laws upon the subject, and the consequent necessary settlement of the affairs of insolvent debtors outside the guiding control of legislation, we have given to this case that consideration which its manifest

importance has seemed to demand, and we cannot avoid the conclusion that its determination should be in accordance with the weight of judicial authority, the tendency of modern legislation, and the growing spirit of the law in favor of exact justice between debtor and creditor.

We must, therefore, hold the deed in question fraudulent and void.

The judgment of the court below will be reversed, and the cause remanded for further proceedings not inconsistent herewith.

*Judgment reversed.*