Jones vs. Dougherty.

No. 39.—SEABORN JONES, plaintiff in error, *vs.* WM. DOUGHERTY, defendant in error.

[1.] The Judge of the Superior Courts in this State, is clothed with the same powers as to interlocutory orders and provisional proceedings in Equity, as are usually exercised by the Chancellor in England, until the cause is set down for trial on the merits.

VOL X 35

Jones *vs.* Dougherty.

[2.] A temporary or *ad interim* receiver may not only be appointed before answer, but even before the subpœna to appear and answer has been served, when it is shown that immense danger would ensue unless the property were taken under the care of the Court.

[3.] The affidavit of the party alone may be a sufficient verification of the facts, to authorize the appointment of a receiver.

[4.] Is an assignment by a debtor of a *part* of his property to trustees, for the benefit, *first*, of such creditors as should, within a given time, execute a release, and the surplus, if any, to the other creditors generally valid? *Quere?*

[5.] A deed void as to creditors may, nevertheless, be good between the parties.

[6.] Creditor's bills may be entertained in Georgia, there being nothing in the Constitution or laws of this State repugnant to such proceedings.

[7.] Assignments by debtors for the benefit of creditors, are, in a peculiar sense, the objects of Chancery jurisdiction.

[8.] The remedy at Law is generally in such cases wholly inadequate as a measure of full relief.

[9.] Where there is a trust fund in danger of being wasted or misapplied, a Court of Equity will interfere, upon the application of any of the creditors, either in his own behalf or in behalf of himself and the other creditors; and by the appointment of a receiver, or in some other mode, grant relief.

[10.] If the trustee omits to act when required by duty to do so, or is wanting in necessary care and diligence in the due execution of the trust which he has undertaken, a Court of Equity will interpose.

[11.] If a judgment creditor files his bill to enforce a trust executed by his debtor, for the benefit of his creditors generally, it is a virtual waiver of his legal lien.

[12.] Where the conveyance is made by the debtor directly to the creditors, the assent must be given at the time of the assignment; but if the assignment be to trustees for the use of the creditors, the legal estate passes and vests in the trustees, and Chancery will compel the execution of the trust for their benefit.

[13.] When the deed is for the payment of the creditors, their assent will be presumed unless their dissent be expressed.

[14.] It has been held that if the creditors are not parties or privies to the deed and the trustee has not dealt with them in performance of its provisions, that the deed operates merely as a power to the trustee, and is revocable by the debtor; but the revocation must be made before the creditors have affirmed the trust by filing their bill to enforce it.

[15.] An assignment to creditors for the payment of their debts, or to trustees for that purpose, cannot be said to be, without consideration, especially if one of the trustees be himself a creditor, and the conveyance purports to be founded upon a consideration however small.

[16.] The death of the debtor does not operate as a revocation of the trust.

In Equity, in Muscogee Superior Court. Decision by Judge IVERSON, at Chambers, April 9, 1851.

On the 3rd day of March, in the year 1851, Wm. Dougherty, in behalf of himself and other creditors of Daniel McDougald, deceased, filed a bill returnable to Muscogee Superior Court, against Seaborn Jones, charging, that on the 25th day of August, 1846, Daniel McDougald made an assignment of a very large amount of property, consisting of lands, negroes, debts and obligations, and other valuable interests, to Seaborn Jones and Robert B. Alexander, (since deceased,) to hold as trustees for the benefit of all his creditors, giving preference to such as within six months thereafter should file with said trustees a release in full of said McDougald; that on the same day said trustees accepted the trust in writing; that in September, 1849, McDougald died largely indebted; that said Jones and Alexander, regardless of their duties and obligations as trustees, had wholly failed to execute the trust, but on the contrary permitted said McDougald from the time of the execution of the said deed to the time of his death, to control, use and enjoy the property assigned; to sell the same at pleasure, and receive and apply to his own use the rents, issues and profits; keeping also the title deeds to the same—the said trustees never having demanded either the property or the title papers; that since the death of McDougald the trustees have been equally as negligent—permitting the property to go into the possession of the widow of the said McDougald, Duncan McDougald and Alex. McDougald, (who had knowledge of the trust,) and who have received the rents, issues and profits of the said property, amounting to the sum of $8,000 per annum; that said Jones was much involved in his own private matters at the time of the execution of the assignment, and that many judgments and a large mortgage are still unsatisfied upon the records of said County; that said Jones claims title to a portion of the property assigned, adverse to the interest of the creditors, and claims himself to be a creditor to a large

amount, and that said Alexander is now dead. The bill farther charged that the administrator of McDougald, in the State of Alabama, was about to sell some of the lands assigned, lying in that State; thereby creating an adverse title, and embarrassing the execution of the trust; that the trust property was becoming much exposed, unprotected, wasted aud scattered, and required the immediate interference of the Court.

The prayer was for an account—the removal of said Jones as trustee, and the immediate appointment of a receiver to take charge of the property and execute the trust.

The bill was verified by the usual affidavit of the complainant.

The presiding Judge granted an order requiring the defendant, Jones, to appear on 15th March, 1851, and show cause why the prayer for a receiver should not be granted—a copy of the bill being served on him in the meantime. The hearing was postponed until the 3d day of April, at which time Jones appeared by his counsel, and showed for cause—

1st. That the Judge had no power to make such appointment in vacation.

2d. That if the Judge had such power, he could not exercise it at that early stage of the case, nor before the answer of the said Jones had been filed.

3d. That if he could exercise it at that stage of the cause, still he could not exercise it in the particular case made by the bill, for the reasons, 1st, that the facts set forth in the bill were not sufficiently verified or proved—more being required for that purpose than the bare oath of the said Dougherty appended to said bill; and 2d, that if sufficiently verified, the facts did not, in themselves, constitute such a case as would justify the said Judge in appointing said receiver as prayed for, in said bill.

On the 9th of April, 1851, the Judge below overruled the showing, and granted an order appointing Adolphus S. Rutherord as receiver.

This order is assigned as error.

H. L. BENNING, for plaintiff in error.

Jones vs. Dougherty.

I. 1. A receiver will not be appointed before answer. 3 *Dan. Ch. Pr.* 427, '9.    2 *Story's Eq.* §§835, '6.    4 *Ga. R.* 423, '4, '5.

2. The Court appoints with great reluctance.   16 *Ves.* 70. 3 *Dan.* 406, '7.

3. The bill does not allege any fear, on the part of plaintiff, of loss to himself. 2 *Story's Eq.* 826.   He could not fear for others, and yet he would bind them.   1 *Story's Eq.* 549.   *Sto. Eq. Pl.* §99.

4. A creditor's bill does not lie in Georgia.   See brief in *Gilbert vs. Thomas and others*, at this Court.

5. There is no allegation of numerousness.   *Sto. Eq. P.* §95.

6. The remedy is adequate at Law.   *Pr. Dig.* 447.   7 *Ga. Rep.* 209.   2 *Ib.* 154.   9 *Ib.* 3.   Though it is alleged that the estate is insolvent, all debts being taken into the account, it is not alleged that it is not able to pay this judgment, obtained before deed of trust.

7. Equity will not aid a judgment creditor till he has exhausted his remedies at Law. 2 *Kelly*, 452.   4 *Ib.* 322, '23.

8. It never aids one by appointing a receiver, when he has a right which he can assert at law.   3 *Dan'l.* 416, 401, '2, '4, '6, '7, 22.   1 *Jac. & Wal.* 657, 16, *Ves.* 70.   2 *Sto. Eq.* §836.

II. No right has vested in defendant in error, under the deed of trust.

1. There is no express assent of the creditors, or any creditor to the deed, and one will not be implied, unless such assent should appear to be to their interest.   2 *Sto. Eq. Sec.* 1086, *a* 2 *Mylne & Keen*, 492.   *Lewin on Trusts*, 107, 108 *marg.*

2. The complainhnt D. has not waived or relinquished his judgment lien.   *Cook on Trust*, 396 *marg.*   1 *Phil.* 694.   2 *Beav.* 385.

3. The *deed* of trust is void, by the Act of 1818, against preferring creditors.   3 *Kelly*, 151.   (Quoting whole Act of 1818) 158.

4. The deed not having been assented to by any creditor, amounted to no more than a power for the benefit of the maker, McDougald deceased, and was revocable by him in his lifetime. 2

*Sto. Eq.* §1036 *b.* 1045, 46.  1196, 982, *and note* 3.   2 *Mylne & Keen.*

5. The relention by McDougald, of the whole property and title papers, &c. in his own hands, and the sale of some of it was in fact an implied revocation.  *Sto. Agency*, §474, '5. The bill alleges that McDougald kept possession of the property and title papers.  Deed was made in 1846.  McDougald died in September 1849.  Alexander died before this bill was brought.

6. At all events the power was revoked by his dying before the assent of any creditor.  *Story's Agency*, §488.  As it was not a power coupled with any interest in the agents, Jones and Alexander.  *Ib.* §489.  *Hunt vs. Rousmanier's administrators*, 8 *Wh.* 174—*quoted fully in Story's Agency, pages* 622, '3, '4.

7. Moreover, if not revoked before it was revoked by the death of Alexander, one of the *joint* agents.  *Story's Agency*, §42. 9 *Ga. R.* 369.  *Sug. on Powers*, 143–4, *marg.*

8. Or his executors, &c., are necessary parties to the bill. (See deed of trust.)

9. At least Jones could do nothing of himself without their co-operation.  It was after A.'s death before Dougherty applied to Jones, &c.

10. The original plaintiff in *fi. fa.* acquiesced in the acts complained of, relying for many years upon the large levy, and these years covering the time in which the acts were committed. *Walker vs. Symonds*, 3 *Swans.* 64.

11. But if that plaintiff did not, still the transfer carried with it to the transferree no right to complain of torts, &c.   4 *Ga. R.* 484, '5, '6.

III. The bill is to collect a debt against the estate, and the administrator.  Mrs. McDougald, as administratrix, is not a party.

2. If a party, she is sued too soon, before her 12 months exemption are out.  *Pr. Dig.* 229.

3. No misconduct on her part is alleged as a ground for dispensing with the Statute.

4. It appears from the inventory that she has ample assets to pay this judgment.

W. DOUGHERTY, for defendant in error.

The defendant in error insists that trusts of this character, to wit: for the benefit of creditors, are, in a peculiar sense, the objects of Equity jurisdiction.	2 *Story's Eq. Jur.* §1073.

The general rule is, that when application is made for the removal of a trustee, and the appointment of a new one, in a proper case made, to wit: that the property has been misapplied, or is in danger in the hands of the existing trustee, or when he has been guilty of laches or other misconduct in administering the trust, a Court of Equity will appoint a receiver.	*Hill on Trustees,* 191, 212, 525.	2 *Story's Eq. Ju.* §§835, 836.	*Middleton vs. Dodwell,* 13 *Ves.* 266.	*Scott vs. Beecher and Wife,* 4 *Price,* 137.	*Hart vs. Crane,* 7 *Paige,* 37.	*Calhoun vs. King,* 5 *Ala.* 523.	*Conah vs. Sedgwick,* 1 *Barbour's Rep.* 210.	*Harrisson vs. Mock,* 10 *Ala.* 185.	*Lewin on Trusts,* 597.	*At page* 303 8 *vol. Law Library. Jenkins vs. Jenkins,* 1 *Paige,* 243.	*Bloodgood vs. Clark,* 5 *Paige,* 577.

That the application to the Court of Equity must be by bill, filed by some of the creditors in behalf of themselves and the other creditors.	*Story's Eq. Pl.* §§102, 216.

It is not necessary, in order to entitle the creditors to take under the assignment in this case, that they should be technical parties thereto, or formally accept the deed; the acceptance of the trustees is sufficient, and the acceptance of the creditors will be presumed until the contrary appears, if there be no stipulation for a release, or other condition in the deed which may not be for their benefit.	2 *Story's Eq. Ju.* §§972, 1036 *a.,* 1045. *New England Bank vs. Lewis,* 8 *Pick.* 113.	*Halsey vs. Whiting,* 4 *Monr. Rep.* 206.	*Egbert vs. Wood,* 3 *Paige,* 517.	*Nichol vs. Munford,* 4 *Ch. R.* 522.	*Small vs. Morewood,* 9 *Barn. & Cress.* 300.	*Marbury vs. Brooks,* 11 *Wheat.* 78.	*Cunningham vs. Freeborn,* 11 *Wend.* 241.	*Kent's Com. vol.* 2, 533, *and notes.	Lewin on Trusts,* 110, *at page* 56, *of vol.* 8, *Law Library.*

*By the Court.*—LUMPKIN, J. delivering the opinion.

Jones *vs.* Dougherty.

The error assigned in this case is, 1st, in overruling the showing made by Jones, the trustee of McDougald, against the appointment of a receiver in his stead.   2d, in the appointment of Adolphus S. Rutherford as such receiver.

[1.] At the . hearing, it was insisted that the Judge had no power to appoint a receiver in vacation.   As this ground is no where noticed in the very able and ample brief of the counsel for the plaintiff in error, I might properly pass it by.   I would remark, however, that the power here claimed, has been exercised throughout this State certainly since 1799, and probably from 1792, when the Superior Courts in Georgia were first clothed with Equity powers in certain cases.   A practice so uniform and universal, must rest, it would seem, upon some legal foundation, and could not have originated in mere judicial caprice.

By the Rules in Equity, established by authority of the Act of December, 1821, (*New Digest*, 452,) the Judge of the Superior Courts, *at Chambers*, has power to pass orders to compel the appearance of non-resident defendants, to dissolve injunctions, to require security to be given upon applications for injunctions, according to the circumstances of the case, and upon such terms as he may deem just and reasonable; they also provide, that bills may be revived by petition to the Judge *at Chambers*, or at a term time, and that he may order, *in vacation*, the originals of all deeds, writings and other exhibits, copies of which have been filed with the bill or answer, to be deposited in the Clerk's office, for the inspection of the adverse party.

And by Statute, the Judge of the Superior Courts is authorized to grant writs of *ne exeat*, to restrain the person and property of the defendant, in certain demands not due, in favor of co-obligors and securities, in behalf of minors and orphans, remaindermen and reversioners, until security is given for the payment of the demand, or the performance of the outstanding liability. *New Digest*, 525, 526.

And I apprehend, that it may be assumed generally, that the Judge of the Superior Courts in this State is clothed with the same powers as to *ad interim* orders or provisional proceedings, as are usually exercised by the Chancellor in England, until the

cause is set down for trial on the merits, when these interlocutory orders are subject to be set aside or affirmed by the Jury, upon the evidence which may be exhibited.

Indeed, this would seem to be a necessary corollary to the decision by this Court in *Beall vs. The Surviving Executors of Fox*, 4 *Ga. R.* 425, 426. We there held, and I doubt not correctly, that we have not only adopted the whole system of English jurisprudence, Common Law, and Chancery, suited to our condition and circumstances, but that we have framed the necessary judicial machinery to give to that system a practical and beneficial effect, and that such is the office and duty of a Court of Equity, and such was the object of the Legislature of 1799, in conferring Equity powers upon the Superior Courts.

And with these passing observations, I shall dismiss this ground, which seems to have been abandoned on the argument.

[2.] The next reason urged against this appointment is, that it was premature, it having been made before the appearance term of the cause, and before the answer of the defendant had been filed.

This point can best be settled by authority.

Mr. *Daniel*, in his admirable work on Chancery Pleading and Practice, admits that strictly speaking, a receiver can only be appointed after answer. And he states, that it seems formerly to have been held, that a receiver could not be granted before ; but he adds, that the rule was broken through by Lord *Kenyon*, in *Vann vs. Barnett*, (2 *Bro. C. C.* 158.) The Master of the Rolls, who sat for the Lord Chancellor in that case, declared, that although the motion for a receiver before answer, was unusual, yet had it been necessary, that he would have made a precedent.

It seems, however, that he was not reduced to this alternative, as Lord *Thurlow* had, several years previously, appointed a receiver of an infant's estate, *upon the filing of the bill, and before a subpœna to appear and answer had been served*. *Pitcher vs. Hilliar*, 2 *Dick.* 580. And Lord *Bathurst*, in a still earlier case, (*Trinity Term*, 1773, *and before the date of our adopting statute*,) granted a receiver before answer. *Compton vs. Bearcroft*, 2 *Bro.*

VOL X 36

*C. C.* 158, *note.* And Mr. *Perkins*, the American editor, states, that it is now the common practice to grant a receiver before answer, where fraud is clearly proved, *by affidavit*, or where it 'is shown that immense danger would ensue, unless the property were taken under the care of the Court. Citing *Hargonin vs. Basely*, 13 *Ves.* 105. *Middleton vs. Dodswell, Ib.* 266. *Scott vs. Beecher*, 4 *Price*, 346. *Metcalf vs. Pulentorft*, 1 *Ves. & Beam.* 180. Not only will a receiver be appointed before answer, but in case of urgency, the Court will entertain the application before appearance. *Farefield vs. Irvine*, 3 *Russ.* 149.

[3.] But it is contended, that the facts set forth in the bill, were not sufficiently proved, to authorize the Court to act, and that the bare oath of the complainant is not enough. In many of the cases heretofore referred to, upon the other ground, the merits were verified only by the affidavit of the party. In *Middleton vs. Dodswell*, the application for a receiver was not only made before answer, but upon the affidavit of the complainant, who was a residuary legatee of the estate. And while the Lord Chancellor very properly remarked, that the time had not come at which the executor was bound to put in answer, *still as he appeared by counsel and commented on the affidavit of the other party, though he made none himself*, that he would grant the order for a receiver.

In the case of *Curand vs. Chadwick, cited in a note to 2 Russell*, 63, the facts upon which the application for a receiver was founded, were made to appear from the *affidavit* of the complainant *alone;* and although the motion was refused in the first instance on other reasons, by the Vice-Chancellor, it is stated by the American editor, that the order was afterwards granted.

The appointment here being temporary only, and not affecting the ultimate right, we hold that the discretion of the Court should not be controlled in acting upon the evidence before it.

[4.] We are now led to the main point made by the record, *i. e.* that the facts alleged in the bill, did not constitute such a case as would authorize the interference of the Chancellor, and under this head the specifications are various ; and as many of them

Jones *vs.* Dougherty.

involve important considerations, each deserves a separate examination.

1. It is contended in the first place, that the assignment itself is void.

*First,* because the creditors are required, upon receiving their proportion of their debts, from the proceeds of the property, to execute and file, within a limited period, a complete discharge of their demands.

And, *secondly,* because it is contrary to the provisions of the Act of 1818.

The trusts declared in the assignment are,

1st. That the trustees shall dispose of the property and collect the debts assigned.

2d. Out of the proceeds pay the expenses of the trust, and retain adequate compensation to themselves.

3d. To pay the residue to all such of the creditors (including indorsers and securities,) as would execute a release within the term of six months.

4th. The rest of the estate conveyed, after the satisfaction and payment of the creditors who should release, to be appropriated to all the other creditors equally.

The deed contains this further provision, that after the payment of all the debts therein specified, the surplus, if any, shall revert to the assignor.

The question as to the validity of a stipulation for a release in an assignment like the present, has never been before this Court directly or collaterally. The adjudications in the Courts of our sister States, have been various, conflicting and unsatisfactory. In Ohio, New York, Maine, Connecticut, Louisiana and Missouri, assignments by a debtor of *all* his property to *trustees,* for the benefit of such creditors as should, within a given time, execute a release, have been pronounced oppressive and void. 5 *Ohio Rep.* 293. 11 *Wend. R.* 187. 14 *Johns R.* 462. 1 *Hop. Ch. Rep.* 573. 5 *Cowen,* 547. 1 *Ed. Ch. Rep.* 77. *Ib.* 457. 6 *Conn. Rep.* 277. *Ang. on Assignments,* 113, 114. 13 *Louisiana R.* 457. 6 *Missouri Rep.* 302. Whilst in Massachusetts, Rhode Island, Pennsylvania and New Hampshire, the decisions prepon-

derate in favor of the validity of these stipulations for a release. 65 *Pick. R.* 28.   *Angell on Assignments,* 112.   2 *Bin.* 176. *Ib.* 338.   5 *New Hamp.* 1,13.

And notwithstanding Judge *Story,* in his Commentaries on Equity Jurisprudence states, that a stipulation on the part of the debtor in an assignment, that creditors taking under it shall release and discharge him from all farther claims beyond the property assigned, will, it seems, be valid and binding, §1036; and that in *Halsey vs. Whitney,* (1 *Mason's Rep.* 226,) the same eminent Jurist ruled, in obedience to what he considered the authority of previous decisions, the same doctrine, yet it is very evident, that on principle, his own opinion was adverse to the validity of these stipulations.

For in the case in *Mason,* (decided in 1826,) he says, that the objection struck him with great force; for that when the debtor stipulates for a release, he surrenders nothing except upon his own terms.   He attempts to coerce his creditors by withholding from them all his property, unless they are willing to take what he pleases to give, or is able to give in discharge of their debts.   There is certainly a delay, and if the assignment be valid, to some extent, a defeating of their rights.   Has it not a tendency to obstruct the common rights of the creditors ?   Is not its design to prevent creditors from receiving compensation out of the debtor's property, without yielding up some portion of their debts, and conferring on him a substantial benefit which he has no legal claim to demand?

Chief Justice *Marshall,* in *Broshear vs. West and others,* decided by the Supreme Court in 1833, (7 *Peters,* 608,) seems to yield his own convictions to what he regarded as the tone of authority.   He observed that the objection to a stipulation-for a release is certainly powerful, as its tendency is to delay creditors. The weight of this argument he acknowledged he felt, and confessed that he was far from being satisfied that, upon general principles, such a deed ought to be sustained.

The name of Chancellor *Kent* may undoubtedly be arrayed on the other side of this controversy.   2 *Kent's Com.* 532, *et seq. and notes,* 5*th edition.*   Among other proofs of his bias, he speaks

of the case of *Harvies vs. Richardson*, (New Hampshire,) as on the *lax* side of the question.

There is a great dearth of English adjudications upon this subject, owing to the fact, that in consequence of their bankrupt laws, such assignments are rarely, if ever, rendered necessary. Precedents from that country are entitled to little weight here— the bankrupt system being a private policy with the British Parliament and people.

Judge *Southerland*, in *Shever vs. Wakeman*, (11 *Wend.*) said, " Let the embarrassed debtor assign his property to whom he pleases, but let the assignment be absolute and unconditional; let it not extort from the fears and apprehensions of creditors or any of them, an absolute discharge of their debts a the consideration for a partial surrender; let it not convert the debtor into a dispenser of alms to his own creditors; and above all, let it not set up his favor and bounty *at auction*, under the cover of a trust to be bestowed to the highest bidder."

It may be suggested that such stipulations are at most but *propositions* to the creditors, which they are free to accept or reject. But the obvious answer to this is, that gaming and usurious borrowing are voluntary transactions, still they are discountenanced by the law. Is not the creditor under these assignments, under equal *moral duress* with the unfortunate victim of usury?

Well may one question, therefore, with the very able Court in Missouri, whether debtors should be allowed, by these contrivances, to make *bankrupt laws* for themselves, notwithstanding the legislative bodies, both Federal and State, have declined to pass such laws, relieving them from their liability to pay their just debts, and whether these stipulations are not against the letter and spirit of the Statute of Frauds, and contrary to the general policy of our laws, as well as to sound views of morality and common honesty.

Besides, while conveyances of the *whole* of his property by a debtor on such terms, have been held as admissible and valid, with respect to these composition deeds, a trust of a *part* only of the debtor's property, on condition that the creditors should give a release for the residue, is considered much more objectionable

and pernicious. *Leaving vs. Binkerhoff*, 5 *John. Ch. R.* 329. This deed does not purport to extend to all the property, *real* and personal, of the grantor, and, *non constat*, that he had no other property. He might have had other and sufficient property, both real and personal ; that conveyed might not have paid but a small part of the respective debts, and yet the creditors were not entitled to receive a cent, unless they relinquished the residue of their debts. Chancellor *Kent* presumed just such a condition in the case cited, to be oppressive and void, inasmuch as the assignment was not general of all the property, but only of a specified part.

[5.] The trustee, however, having ratified the assignment by accepting the trust, it does not lie in his mouth to deny its validity. He is clearly estopped from calling in question the legality of the conveyance. It is for the *creditors*, and not for the *parties* to the instrument, to contest the privilege here assumed by the *debtor*, of dictating terms to his creditors, and postponing such as will not accede to them. And here we leave this question. A deed void as to creditors may, nevertheless, be good between the parties.

How far the provision in the deed appropriating whatever surplus might remain, if any, to those creditors who refused to release within the prescribed limit, might affect this principle, *if at all*, I have not had time, nor do I deem it necessary to examine. Indépendent of any express provision to this effect, a Court of Equity would, I apprehend, decree whatever surplus might remain to those creditors who had not acceded to the deed. 7 *Peters*, 608.

[6.] Another specification under the fourth head is, that this is a creditor's bill, and that no such proceeding can be maintained according to the laws and Constitution of this State, guaranteeing to parties the right of trial by Jury. This is the second time that this argument has been pressed upon the Court during the present term.

We confess we do not feel the force of this objection. Thirty years' experience at the bar, enable me to bear testimony, not only to the convenience and absolute necessity of such proceed-

ings, but also to their entire practicability. Bills of this character are brought daily in every Circuit in the State, by creditors against executors and administrators, or *vice versa,* for the proper administration of the assets of the estate, in which the rights of all parties are finally settled by the decree. Under these Chancery proceedings all questions of law are referred to the Court, and all matters of fact are passed upon by the Jury, and as was held by this Court in the *Macon & Western R. R. Co. vs. Parker,* (9 *Ga. Rep.* 377,) where this whole doctrine is elaborately investigated, there are many cases growing out of insolvencies by individuals and corporations, where proceedings in the nature of creditor's bills are indispensably necessary. There is no other mode to reach and dispose of the entire merits.

[7.] The fifth specification is, that the complainant has an adequate remedy at Common Law, and that he has not presented such a case as will entitle him to the interposition of a Court of Equity. Without relying on the statement in the bill, that the complainant has been informed and believes it to be true, that if he were to levy his execution on the property of the defendant, that he should be delayed in bringing the same to sale, and when sold, the proceeds thereof would be claimed by older executions against the defendant, I would remark, that trusts like this are, in a peculiar sense, the objects of Equity jurisdiction.

[8.] For although at Law there may, under some circumstances, be a remedy for the creditors, that remedy is often very inadequate as a measure of full relief. On the other hand, Courts of Equity, by their power of enforcing a discovery and account from the trustees, and of making all the creditors, as well as the debtor, parties to the suit, can administer entire justice and distribute the whole funds in their proper order, among all the claimants, upon the application of any of them, either on his own behalf, or in behalf of himself and all other creditors. 2 *Story's Eq. Jur.* §1037, *and cases cited.*

[9.] Besides it is an established rule of the Court of Chancery, that when a trust fund is in danger of being wasted or misapplied, it will interfere on the application of those interested in the fund, and by the appointment of a receiver, or in some other

mode, secure the fund from loss. *Ibid*, §836.   5 *Ala. Rep.*
525.

[10.] And do not the allegations in the bill establish conclu-
sively that the trust fund was in the most imminent danger of be-
ing entirely wasted, or placed beyond the reach of the *cestui que
trust?*   It was the plain duty of the trustee under the deed, to
take possession of the property, and sell it as soon as practicable,
collect the debts, and appropriate the entire fund, as the instru-
ment required.   Instead of this, he allowed the assignor from
the time of the execution of the deed to the period of his death,
to keep the property in his own possession, and to appropriate
the same to his own use, as if the deed had never been made,
and even to sell and otherwise dispose thereof at his pleasure.
And that since the death of the debtor, the trustee has suffered
his widow and other persons to retain said trust property, and to
receive and appropriate the rents, issues and profits accruing
therefrom, the annual income of which is worth some $8,000.
The bill further charges, that Daniel McDougald died insolvent,
and that Robert B. Alexander, the co-trustee, has departed this
life, leaving his estate unrepresented ; that the administrator of
the assignor in Alabama, is proceeding to dispose of so much of
the trust property as is situate in that State, and thus impair its val-
ue by creating conflicting titles thereto, and thus by the negligence
of the surviving trustee, there is great danger that said trust proper-
ty will be wasted and diverted from the objects of the trust.   The
bill does not allege that the surviving trustee is insolvent, but in
addition to the charge of negligence and gross misconduct, it
exhibits *prima facie* proof of very heavy pecuniary responsibilities
on the part of the trustee, from which danger may be apprehend-
ed.   The complainant, shortly after the death of Alexander,
knowing as he did, that Jones had never attempted to execute
the trust, or taken any care or control of the property, or mani-
fested any disposition to do so ; and seeing the scattered and ex-
posed condition of the property; the waste and injury that had
already accrued to the same, and that would continue for want
of some one to protect and manage it; and also the adverse
interest of the trustee, he being himself a creditor of McDougald

applied to Jones and requested him to surrender the trust and unite with the complainant in selecting some fit and suitable person to be appointed in his stead, who would promptly and faithfully execute the trust according to the provisions of the deed. But he positively refused to accede to the proposition, and on the contrary asserted his determination to hold on to the trusteeship, and insisted on his rights to control said trust..

And by this course of procedure, the whole effect of the assignment was, to keep the creditors from the pursuit of the debtor during his lifetime, and of his estate since his death, by the means the law had provided. This was the perversion of the trust to an unjust and improper purpose, and was a plain violation, of his duty as trustee. If the trustee omits to act when duty requires him to be active, or if he is wanting in necessary care and diligence in the due execution of the trust which he has undertaken, a Court of Equity will interpose. 10 *Ala. R.* 185.

[11.] But it is said that the complainant has not relinquished his judgment lien. By asserting his rights under the deed, it is a virtual waiver of his legal lien. At any rate, it will be time enough to resist its pretensions to priority of payment, when the fund is distributed, should the attempt be then made to enforce it.

[12.] It is further objected, that no right has vested in the complainant, because the creditors never assented to the deed.

It is now a well settled principle, both in the English and American law, and sustained by numerous authorities, that where the conveyance is made directly to the creditors, their assent must be given at the time of the assignment, as it requires the agreement of two parties to make a contract. But if the assignment (as this was) be to trustees for the use of the creditors, the legal estate passes and vests in the trustees, and Chancery will compel the execution of the trust for the benefit of the creditors, though they be not at the time assenting and immediate parties to the conveyance. See *Hendricks vs. Robinson,* 2 *Johns. Ch. Rep.* 307, 708, and the series of cases there referred to, and to which may be added, the case of *Picklock vs. Syster,* 3 *Maule and Selwyn,* 371, and *Bruin vs. Mentum,* 2 *Gallison,* 557.

[13.] Deeds of trust are often made, not only for the benefit of persons who are absent, but even for persons who are not in being. And no expression of the assent of the persons for whose benefit they are made, has ever been required as preliminary to the vesting of the legal estate in the trustee. Such trusts have always been executed on the idea, that the deed was complete when executed by the parties to it; and real creditors are rarely unwilling to receive their debts from any hand which will pay them. Their assent to the assignment will be presumed unless their dissent be expressed. *Brooks vs. Marbury,* 11 *Wheat. Rep.* 78. *North vs. Turner,* 9 *Serg. & Rawle,* 224. *DeForest vs. Bacon,* 2 *Conn. Rep.* 633.

[14.] But this rule in Chancery, seems to have been made subject, to borrow the language of Judge *Kent,* to some "embarrassing qualifications," namely : that if the creditors are not parties or privies to the deed, and the trustees have not dealt with them in pursuance of its provisions, the deed is regarded as a mere disposition between the debtor and the trustee for his own accommodation—that it operates as a power merely to the trustee, and is revocable by the debtor. *Acton vs. Woodgale,* 2 *Mylne and Keen,* 492. *Page vs. Brown,* 4 *Russ.* 6. *Wallwin vs. Coutts,* 3 *Meriv's. Rep.* 707. *Ganard vs. Lord Lauderdale,* 3 *Simon's Rep.* 1. *Ibid,* 14. *Maber vs. Hobbs,* 2 *Young & Coll.* 317, 327. 2 *Story's Eq. Jur.* §§972, 1036, a. 1044, 1045, 1046, 1196. And *Wallwyn vs. Coutts,* (3 *Meriv.* 707,) decided in 1815, seems to be referred to as the foundation of this modern doctrine. The case contains only the facts and the order of Chancellor *Eldon,* and occupies altogether, only a half page in the original Report.

Waiving for the present, the inquiry, how far the Courts in this State would be bound by the foregoing principle, I propose to test the case under discussion by it.

Vice Chancellor *Shadwell* was counsel in the cause in Merivale ; and in deciding subsequently the case of *Ganard vs. Lord Lauderdale,* he stated the principle deducible from *Wallwyn and Coutts ;* and that is, that where there is an actual settlement made for vesting an estate or stock in trustees for volun-

teers, their legal character being complete, the persons who have the legal character are trustees for the volunteers, who may claim as *cestui que trusts*, against the trustees under the deed; and that where without the privity of any one, *without considera-tion*, and without notice to any creditor, a person makes disposi-tion between himself and trustees for payment of debts, he is merely directing the mode in which his own property shall be applied for his own benefit; in other words, the arrangement by the debtor is made without communication with any one, either *trustee* or *creditor*, and merely for his own convenience, in which no other person has acquired any vested interest, and therefore, it cannot be enforced against him or his trustees; and he may alter the trusts as he pleases, or otherwise dispose of the property.

The Vice Chancellor asserted, that there was no conflict be-tween this case and that of *Ellison vs. Ellison*, (6 *Ves.* 662,) and *Pulontoft vs. Pulontoft*, (18 *Ves.* 99,) in which Lord *Eldon* held, that where a trust is once created and accepted, it is irrevocable, and it is not competent to defeat it.

Upon the principles of this case, then, did not the assignees take the legal title to the property; and would not the English Courts, upon their own principles, have enforced this trust for the benefit of the creditors?

[15.] Independently of all this, the deed recites the nominal consideration of one dollar; and it appears that the assignee is himself a creditor. Now, the amount of the consideration being immaterial, and the relation of debtor and creditor subsisting be-tween the parties, and the object of the transfer being the pay-ment of the creditors, is not all this sufficient to sustain the con-veyance? An assignment to creditors or to individuals for the benefit of certain creditors, cannot be said to be without consid-eration. 3 *McLean's Rep.* 177. And where the assignment has been once *accepted* by the assignee, the rights of the credit-ors become vested; and neither the subsequent renunciation, nor any other act of the parties to the instrument, can affect its validity. *Seal vs. Duffy*, 4 *Burr.* 274.

But conceding that the debtor has the right to make the as-signment, when made without consultation with the creditors,

and without their knowledge, and before their interests became vested, has it been done in this case?

[16.] It cannot be pretended that the death of McDougald would of itself operate as a revocation; none of the cases go to that extent. Whether a deed executed, and accepted, and recorded, could be revoked by an act *in pais*, is very questionable. But there is no fact of this sort to be arrayed in opposition to the deed, if true that the debtor retained possession of the property, receiving the income, and that he disposed of some part thereof. All this was done, however, by the assent of the trustee. It is a ratification therefore, rather than an implied revocation of the conveyance.

*Galt vs. Dibrell*, (10 *Yerg. Rep.* 158,) determines, that notwithstanding a trust for the benefit of creditors to whom the conveyance has not been communicated, and who are not privies to the conveyance, merely operates as a power to the trustees, and is revocable by the debtor; yet, unquestionably the revocation must be made before the creditors have received the information and affirmed the trust. And this we hold to be an incontrovertible position. See 2 *Kent's Com.* 531, 532, 533. 1 *Johns. Cas.* 205. 12 *Johns. Rep.* 281. 2 *P. Wms.* 427. 1 *Johns. Ch. Rep.* 129.

And in *Robertson et al. vs. Sublett et al.* (6 *Humph. Rep.* 313,) it is decided to be too late to revoke a trust deed after the creditors by *their bill* have adopted and affirmed its provisions. It then becomes obligatory for their benefit.

After a careful and thorough examination of the multifarious points presented by the record in this case, we can see nothing that calls for a reversal of the judgment.

I would simply add in conclusion, that the death of Mr. Alexander, one of the trustees, after the acceptance of the trust by both, might possibly, at a future stage of this cause, render an application to the Court necessary to supply the vacancy, the deed not having provided that less than the whole number might act. It certainly cannot affect the validity of the assignment.